50 P.3d 428

STATE of Hawai'i, Plaintiff–Appellee,

v.

Randolph Earl BUSH, Defendant–Appellant.

No. 24120.

Intermediate Court of Appeals of Hawai'i.

June 12, 2002.

As Amended June 20, 2002.

Michelle L. Agsalda, Deputy Public Defender, on the briefs, for Defendant–Appellant.

Alexa D.M. Fujise, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant Randolph Earl Bush (Bush) appeals from the February 9, 2001 judgment of the District Court of the First Circuit [1] convicting Bush of Harassment, Hawaii Revised Statutes (HRS) § 711–1106(1)(f) (Supp.2001). We affirm.

HRS § 711–1106 (Supp.2001) states, in relevant part, as follows:

**Harassment.** (1) A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:

. . . .

(b) Insults, taunts, or challenges another person in a manner likely to provoke **an immediate** violent response or **that would cause the other person to reasonably believe that the actor intends to cause bodily injury to the recipient or another or damage to the property of the recipient or another;**

. . . .

(f) Makes a communication using offensively coarse language that would cause the recipient to reasonably believe that the actor intends to cause bodily injury to the recipient or another or damage to the property of the recipient or another.

(2) Harassment is a petty misdemeanor.

(Emphases added.) The emphasized parts of subsection (b) above were added in 1992. Subsection (f) above was added in 1996. Neither the emphasized parts of subsection (b) above nor subsection (f) above has ever been in any version of the Model Penal Code.[2]

---

1. Judge Barbara Richardson presided in this case.

2. In comparable statutes, other states use clearer language. For example, Minnesota Statutes Annotated § 609.749 (2001) states, in relevant part, as follows:

Subdivision 1. Definition. As used in this section, "harass" means to engage in intentional conduct which:

(1) the actor knows or has reason to know would cause the victim under the circumstances to feel frightened, threatened, oppressed, persecuted, or intimidated; and

(2) causes this reaction on the part of the victim.

In other words, the victim actually must have the specified feeling and the feeling does not have to be reasonable.

The General Laws of Rhode Island Annotated (2000) states, in relevant part, as follows:

(2) "Harasses" means following a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or bothers the person, and which serves no legitimate purpose. The course of conduct must be of a kind that would cause a reason-

Immediately prior to the trial, Bush was orally charged, in relevant part, as follows:

Randolph Earl Bush, on or about February 6, 2000, in the City and County of Honolulu, State of Hawaii, with ... intent to harass, annoy or alarm ... Esther Ah-San, you did make communication using offensively [coarse] language that would cause Esther AhSan to reasonably believe that ... you intended to cause bodily injury to Esther AhSan or another or damage the property of Esther AhSan or another[.]

Initially, we must identify the material elements of the offense. As noted above, the crime alleged in this case has the following material elements:

A. with intent to harass, annoy, or alarm Esther AhSan (AhSan);

B. Bush made a communication;

C. using offensively coarse language; and

D. that would cause AhSan to reasonably believe that Bush intended to cause bodily injury to AhSan or another or damage to the property of AhSan or another.

Elements A, B, and C are clear. Element D is not clear because it says "would cause AhSan to reasonably believe" rather than "did cause AhSan to reasonably believe[.]" These are the following possibilities:

1. AhSan reasonably believed.

2. AhSan unreasonably believed.

3. AhSan did not believe but if she had believed, her belief would have been reasonable.

4. AhSan did not believe but if she had believed, her belief would have been unreasonable.

5. There is no evidence to support a finding on the question whether AhSan did or did not believe but if she had believed, her belief would have been reasonable.

6. There is no evidence to support a finding on the question whether AhSan did or did not believe but if she had be-

lieved, her belief would have been unreasonable.

It is clear that possibilities 2, 4, and 6 do not satisfy the requirements of the statute. Do possibilities 3 and 5 satisfy the requirements of the statute? Conf. Com. Rep. No. 34 on H.B. 3653, 1996 Legislature, states, in relevant part, as follows:

The purpose of this bill is to:

. . . .

(5) Create a separate offense prohibiting a person from making a communication using offensively course [sic] language that would cause the recipient to reasonably believe that the actor intends to cause bodily injury or property damage.

In light of the language of the statute and legislative history, we conclude that possibilities 3 and 5 do not satisfy the requirements of the statute. The statute says "would cause the recipient to reasonably believe." It does not say "would cause a reasonable person to believe." It is unreasonable to conclude that it is possible that the actor's "offensively coarse language ... would cause the recipient to reasonably believe" but in fact did not. Thus, we conclude that Plaintiff Appellee State of Hawai'i (the State) was required to prove that AhSan, in fact, reasonably believed.

At the trial, evidence was presented of the following facts. On February 6, 2000, at approximately 7:45 p.m., while AhSan was pregnant and working at the front desk of the Kuhio Village Resorts Hotel, Bush leaned on the counter and, while about two feet from AhSan, stated to her that "[her] nipples look really good[.]" When AhSan asked him "what he had said[,]" Bush "said to [AhSan] that he wants to suck on [her] nipples 'cause he likes [her] nipples." His tone of voice was soft and low. AhSan noticed that Bush was drunk and asked him to leave. Bush continued to make comments to AhSan for another two or three minutes but AhSan "just didn't pay attention to what he was saying at that time." Bush then moved away to the house

able person to suffer substantial emotional distress, or be in fear of bodily injury.
In other words, the victim must actually be seriously alarmed, annoyed, or bothered, and the course of conduct must be of a kind that would cause a reasonable person to suffer one of the two specified reactions.

phone and began talking to AhSan in a loud voice. Bush's yelling "kinda got [AhSan] upset[.]" A person named "Tom" worked in the hotel. At AhSan's request, Tom walked over to Bush and confronted him. Bush looked over at AhSan and, in a very loud voice, told her that she is "a bitch" and accused her of trying to "start some shit with him." AhSan responded by telling Tom, " 'Just let him go, I'm on the phone,' you know, 'with 9–1–1.' " When asked by the deputy prosecutor whether she then was concerned for her own safety, AhSan responded, "Yes, I do." She was not asked to explain her answer. While AhSan was on the phone, Bush moved to the middle of the lobby and, in AhSan's words, "wasn't close to [AhSan]." Bush then yelled at AhSan, "Bitch, you wait, you wait what I'm gonna do something to you" and then left.

At the conclusion of the State's evidence, the court denied Bush's motion for judgment of acquittal. The investigating police officer then testified as a witness for the defense. Bush did not testify. At the conclusion of the case, the court denied Bush's motion for judgment of acquittal.

The Court sentenced Bush to: (a) probation for six months; (b) ordered him to undergo an alcohol and substance abuse assessment and any treatment that is recommended by that assessment until clinically discharged; (c) ten hours of community service work; (d) pay the $25 Criminal Injuries Compensation Fund fee and the $75 probation fee; (e) report for fingerprint identification; and (f) stay away from and have no contact with AhSan. The Court denied Bush's motion for a stay of the sentence pending appeal.

In this appeal, Bush asserts the following points:

1. The "State failed to establish that Bush communicated 'offensively coarse language' to AhSan."

2. The "State failed to establish [that] AhSan reasonably believed that Bush intended to cause bodily injury to AhSan."

3. The "State failed to establish that Bush acted with the requisite state of mind to commit the offense of Harassment."

4. "[T]he trial court failed to enter a finding that Bush acted with the requisite state of mind to commit the offense of Harassment."

Upon a review of the record, we conclude that points 1, 2, and 3 have no merit. We further conclude that point 4 has no merit because neither of the parties requested special findings by the court as allowed by Hawai'i Rules of Penal Procedure Rule 23(c) (2002).[3]

## CONCLUSION

Accordingly, we affirm the district court's February 9, 2001 judgment convicting Bush of Harassment, HRS § 711–1106(1)(f) (Supp. 2001).

Concurring opinion by FOLEY, J.

I concur in the decision reached by the majority because "viewing the evidence in the light most favorable to the State, there is substantial evidence to support the conclusion of the trier of fact" that Defendant Appellant Randolph Earl Bush committed the offense of Harassment, in violation of Hawaii Revised Statutes § 711–1106(1)(f) (Supp.2001). *State v. Hirayasu,* 71 Haw. 587, 590, 801 P.2d 25, 26 (1990) (internal quotation marks omitted). I agree with the majority that Bush's failure to request that the trial court make special findings as to Bush's state of mind precludes Bush from raising this issue on appeal. Hawai'i Rules of Penal Procedure Rule 23; *State v. Bigelow,* 2 Haw.App. 654, 638 P.2d 873, 874 (1982) (general finding of guilt sufficient when no request for special finding).

---

**3.** Hawai'i Rules of Penal Procedure Rule 23(c) (2002) states, in relevant part, that "[i]n a case tried without a jury the court shall make a gener-

al finding and shall in addition, on request made at the time of the general finding, find such facts specially as are requested by the parties."